[Cite as *State v. Keith*, 2023-Ohio-3428.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

       PLAINTIFF-APPELLEE,               CASE NO. 9-22-28

       v.

CHRISTOPHER ELAN KEITH, JR.,        O P I N I O N

       DEFENDANT-APPELLANT.

---

Appeal from Marion County Common Pleas Court
Trial Court No. 21-CR-146

**Judgment Affirmed**

Date of Decision: September 25, 2023

---

APPEARANCES:

    *April F. Campbell* for Appellant

    *Raymond A. Grogan, Jr.* for Appellee

**MILLER, P.J.**

{¶1} Defendant-appellant, Christopher Elan Keith, Jr., ("Keith") appeals the conviction entered against him by the Marion County Court of Common Pleas following a jury returning a guilty verdict on a charge of aggravated possession of drugs. After due consideration, we find no error and affirm the conviction.

{¶2} On April 2, 2021, Officer Brett Thomas ("Officer Thomas") of the Marion Police Department was patrolling in the city when he observed a small, two-door BMW commit a traffic violation, causing the officer to initiate a traffic stop of the vehicle. The vehicle was a two-seater with only a driver seat and front passenger seat. The driver was identified as Keith. In addition, there was a young child in the passenger side without any type of child seat or restraint being used. After Officer Thomas approached the BMW, Keith and the child both exited the vehicle with the child climbing over the center console to exit through the driver side door. The child remained with a second officer while Keith spoke with Officer Thomas. Through his conversation with Keith, Officer Thomas began to suspect Keith was under the influence of alcohol. At one point during the encounter, Keith reached across the car in order to retrieve information from the glove compartment. At this time, Officer Thomas went to the passenger side of the vehicle to better observe Keith, who was looking in the glove compartment. From this vantage point, the officer readily observed a clear plastic baggie containing a white powdered

substance. As a result of this observation, Keith was placed in handcuffs and ultimately arrested. The white powder was later analyzed and found to contain approximately 27.93 grams of methamphetamine.

{¶3} On April 7, 2021, Keith was indicted by the grand jury on a single count of aggravated possession of drugs in violation of R.C. 2925.11(A)(1), constituting a felony of the second degree. At his arraignment, Keith entered a not guilty plea and the case proceeded to several pretrial conferences in preparation for trial.

{¶4} In September 2021, prior to trial, Keith and his attorney stipulated to Keith taking a polygraph examination regarding his knowledge of the drugs being in the car at the time of the traffic stop. Keith, his attorney, and the prosecutor signed a "Stipulation of Use of Polygraph Examination Results." An examiner with the Bureau of Criminal Investigation ("BCI") conducted the polygraph on September 23, 2021. During the polygraph examination, Keith showed specific reactions to the exam questions that were indicative of deception.

{¶5} A two-day jury trial commenced on April 7, 2022. Three witnesses testified against Keith. Officer Thomas testified regarding the traffic stop and his observing the baggie with a white powdery substance in Keith's vehicle. Kelsey Degen ("Degen"), a forensic scientist with BCI, testified about her analysis of the contents of the baggie and conclusion that the contents were a crystalline substance containing methamphetamine. Lastly, Steven Stechschulte ("Stechschulte"), the

polygraph examiner with BCI, testified regarding the polygraph examination administered to Keith and the results indicating deception. The State also introduced a number of exhibits into evidence including the baggie containing the methamphetamine, video from Officer Thomas's body camera (State's Exhibit 2), various photographs of Keith's car, the BCI chemical analysis report, and the BCI polygraph report. The polygraph stipulation signed by the parties was not offered as evidence for the jury's consideration but was proffered into the record by the parties. Thereafter, the State rested its case. At that time, Keith made a Crim.R. 29 motion for acquittal, which was overruled. Keith testified in his own defense disavowing the polygraph results and claiming he did not know how the baggie containing the methamphetamine came to be in his car.

{¶6} Keith was found guilty of the charge and subsequently sentenced to serve an indeterminate prison term of eight to twelve years of incarceration. The sentencing entry was filed on April 29, 2022. It is from this judgment that Keith appeals submitting two assignments of error, which we consider in reverse order.

### Second Assignment of Error

**Keith's conviction should be reversed because the trial court should not have admitted Keith's polygraph at trial without instructing the jury about them as required by *State v. Souel.***

{¶7} In his second assignment of error, Keith contends the trial court erred by failing to give to the jury the instruction required by paragraph four of the

syllabus in *State v. Souel*, 53 Ohio St.2d 123 (1978). "In *Souel*, the Ohio Supreme Court held that the results of a polygraph examination are 'admissible in evidence in a criminal trial for purposes of corroboration or impeachment' provided certain specified conditions are observed." *State v. Curry*, 3d Dist. Allen No. 1-15-05, 2016-Ohio-861, ¶ 73, quoting *Souel* at syllabus. Those conditions include: a written stipulation by the parties providing for the defendant to submit to the examination and for the subsequent admission at trial of the graphs and examiner's opinion thereon; the defendant being afforded the right to cross-examine the polygraph examiner; and the court providing the jury with an instruction to the effect that the examiner's testimony does not tend to prove or disprove any element of the crime with which the defendant is charged but that it is for the jurors to determine what weight and effect such testimony should be given. *Souel*, at paragraphs one, three and four of the syllabus.

{¶8} "Trial courts have a responsibility to give all jury instructions that are relevant and necessary for the jury to properly weigh the evidence and perform its duty as the factfinder." *State v. Shine-Johnson*, 10th Dist. Franklin No. 17AP-194, 2018-Ohio-3347, ¶ 25. As a general matter, "[j]ury instructions are within the trial court's discretion, which an appellate court will not disturb absent an abuse of discretion." *State v. Orians*, 179 Ohio App.3d 701, 2008-Ohio-6185, ¶ 10 (3d Dist.). Here, however, Keith did not object when the trial court failed to provide a specific

instruction regarding the polygraph examination. In fact, Keith's defense counsel did not offer any dissatisfaction with the instructions to be given to the jury. (Apr. 8, 2022 Tr. at 41-42). Because Keith did not object to the jury instructions, he has forfeited all but plain error on appeal. *See State v. Kean*, 10th Dist. Franklin No. 17AP-427, 2019-Ohio-1171, ¶ 65.

**{¶9}** For plain error to apply, the trial court must have deviated from a legal rule, the error must be plain, i.e., an obvious defect in the proceeding, and the error must have affected the defendant's "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "[T]o demonstrate that the trial court's error affected a substantial right, the defendant must establish that there is a reasonable probability that, but for the trial court's error, the outcome of the proceeding would have been otherwise." *State v. Sutton*, 3d Dist. Seneca No. 13-21-11, 2022-Ohio-2452, ¶ 50. We take "[n]otice of plain error * * * with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**{¶10}** The trial court did not give a jury instruction using the precise language from *Souel*. However, the trial court did instruct the jury regarding assessing witness credibility and assigning weight to the various testimony. For instance, prior to the presentation of the evidence in this case, the trial court advised the jury as follows:

> Testimonial evidence is where a witness takes the stand, is administered an oath and testifies either to the facts that he or she has seen or heard or may have some specialized knowledge about. It is for you to decide the credibility of the witnesses and the weight to give their testimony. In making these decisions, you will apply the test of truthfulness that you apply in your daily lives. These tests include the appearance of each witness on the stand, the witness's manner of testifying, the reasonableness of the testimony, the opportunity the witness had to see, hear, and know the things about which he or she is testify[ing], and all the – and the witness's accuracy of memory, frankness or lack of it, intelligence, interest and bias, if any, together with all the facts and circumstances surrounding the testimony. In applying these tests, you will assign to the testimony of each witness such weight as you deem proper. You are not required to believe the testimony of any witness simply because the testimony was given under oath. You may believe or disbelieve all or any part of the testimony of any witness.

(Apr. 7, 2022 Tr. at 236-237).

**{¶11}** Additionally, after Stechschulte was asked a number of introductory questions regarding his background and qualifications, the trial court stated the following:

| | |
|---|---|
| [Trial Court]: | [Counsel], do you wish to voir dire this witness on his qualifications to be determined an expert polygraph examiner? |
| [Defense Counsel]: | Not for [the] purposes [of] today, Your Honor. We'll stipulate to his expert status. |
| [Trial Court]: | Very good. |
| | Then without objection this witness will also be qualified as an expert * * * in the fields of polygraph examination and analysis. |

-7-

> Ladies and gentlemen, the same instruction I gave you with regard to expert testimony and the ability for * * * that expert to testify about opinion evidence [applies here]. Normally, a witness may not testify as to an opinion but if their training and experience is such that they are declared an expert then they are able to render an opinion in the field of their expertise for whatever weight you decide to give it.[1]

(Apr. 7, 2022 Tr. at 314).

{¶12} As part of its final instructions to the jury, the trial court advised:

> Generally speaking, a witness may not express an opinion; however, in certain circumstances, a witness may have been allowed to express their opinion because of their education, knowledge and/or experience. Such testimony is admitted for whatever assistance it may provide to help you arrive at a just verdict.[2]

(Apr. 8, 2022 Tr. at 68).

{¶13} The collective nature of these instructions was sufficient to advise the jurors it was their obligation to weigh the evidence and the testimony of each witness, including the two experts who testified. The trial court was clear that the expert witnesses could express their opinion because of their education, knowledge and experience. The jury was to evaluate the quality of this testimony by applying the usual tests, including things such as the appearance of the witness on the stand,

---

[1] This was essentially the same instruction the trial court provided to the jury after Degen was qualified as an expert witness in the area of chemical identification and analysis. (*See* Apr. 7, 2022 Tr. at 297).

[2] This instruction was drawn from Ohio Jury Instruction, CR 409.21 ¶ 1. The trial court, however, did not provide the specific instruction from paragraph three of this section regarding how to weigh expert testimony. Nevertheless, the court did provided appropriate guidance on this matter in its general instructions.

the manner of testifying, the reasonableness of the testimony, the intelligence, interest and bias of the witness.

{¶14} After reviewing the testimony and evidence presented at trial, we are not persuaded the trial court committed plain error by failing to give the specific instruction under *Souel* that "the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged, and that it is for the jurors to determine what weight and effect such testimony should be given." *Souel*, 53 Ohio St.2d, at paragraph four of the syllabus. We come to this conclusion because the totality of instructions provided by the court specifically indicated it was up to the jury to decide what weight to give to each expert's testimony and because there was substantial, other evidence demonstrating that Keith knowingly possessed the illegal drugs found in his vehicle. *See State v. Vielma*, 3d Dist. Paulding No. 11-11-03, 2012-Ohio-875, ¶ 40 (finding substantial evidence of the defendant's guilt was sufficient to overcome plain error in the trial court's failure to instruct the jury regarding the defendant's polygraph examination).

{¶15} In this case, Keith was the owner of the small BMW coupe he was driving at the time of the traffic stop. (State's Ex. 2). This vehicle had only a front seat and Keith's young daughter was the only passenger. (*Id.*); (Apr. 7, 2022 Tr. at 267). Officer Thomas testified he observed the baggie with white powder wedged between the center console and the passenger side seat. (State's Ex. 2); (Apr. 7,

2022 Tr. at 259-261). This part of the officer's body camera video was expressly shown to the jury by the prosecutor. (*Id.*); (*id.*). Throughout the interaction with Officer Thomas, Keith attempted to draw attention away from the vehicle. For example, he had his daughter exit the car through the driver's side door rather than from the passenger side, which would have exposed the baggie to view by the officers. Additionally, he removed his coat and dropped it in the street along with various other items and a bag of food he attempted to hand the officer. (State's Ex. 2). At trial, Keith attempted to disavow knowledge of the drugs in the car by insinuating other individuals had access to the vehicle. (Apr. 8, 2022 Tr. at 13, 23). These efforts were contradicted by his testimony that he reached over the center console (and thus over the baggie of drugs) to put a can of beer on the passenger side floorboard. (*Id.* at 17). Additionally, Keith testified that, after leaving a local restaurant, he helped his daughter get in the passenger side of the vehicle (arguably a vantage point from which he would have observed the baggie in the same manner Officer Thomas saw the baggie) but later amended this statement to indicate he had the girl enter through the driver-side door. (*Id.* at 26-28). In sum, the results of polygraph examination served to corroborate the evidence against Keith and did not independently establish the element of Keith's knowledge of the drugs in his vehicle. Additionally, the polygraph results impeached Keith's testimony that others had access to the vehicle and may have left the drugs behind.

{¶16} The second assignment of error is overruled.

**First Assignment of Error**

**Keith's conviction should be reversed because his trial counsel was ineffective in a manner that prejudiced Keith.**

{¶17} In his first assignment of error, Keith complains his trial counsel failed him in three instances. First, he claims the State established venue only during redirect examination of Officer Thomas and trial counsel failed to object. Second, Keith contends counsel should have requested a jury instruction pursuant to *Souel* regarding the use of polygraphic evidence at trial. Finally, he contends counsel should have requested a jury instruction relating to the jury's use of expert testimony. We will address each contention in due turn.

{¶18} "In criminal proceedings, a defendant has the right to effective assistance of counsel under both the United States and Ohio Constitutions." *State v. Evick,* 12th Dist. Clinton No. CA2019-05-010, 2020-Ohio-3072, ¶ 45. A defendant asserting a claim of ineffective assistance of counsel must establish: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole,* 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies

prompted by reasonable professional judgment. *Strickland* at 689. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie,* 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance of counsel. *State v. Frazier,* 61 Ohio St.3d 247, 255 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley,* 42 Ohio St.3d 136, 141-142 (1989).

{¶19} Prejudice results when "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bradley* at 142, quoting *Strickland* at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.,* quoting *Strickland* at 694.

{¶20} In his first complaint about trial counsel, Keith contends the State failed to establish the location of the offense as occurring in Marion County during the direct examination of Officer Thomas and went beyond the scope of permissible redirect examination of the officer in order to prove venue. Keith contends his attorney was ineffective by failing to object to the State's redirect examination. We disagree.

**{¶21}** Venue is not a material element of any crime but, unless waived, is a fact that must be proven at trial beyond a reasonable doubt in order to sustain a conviction. *State v. Tupps,* 3d. Dist. Crawford No. 3-22-48, 2023-Ohio-2097, ¶ 10. Venue does not need to be proven in express terms but can be established by all of the facts and circumstances viewed in the light most favorable to the State. *State v. McVety*, 3d Dist. Logan No. 8-16-19, 2017-Ohio-2796, ¶ 10. "Venue is satisfied where there is a sufficient nexus between the defendant and the county of the trial." *State v. Chintalapalli,* 88 Ohio St.3d 43, 45 (2000).

**{¶22}** In the instant case, venue was proven during the direct examination of Officer Thomas, who testified he was employed as a city police officer in Marion with the general duties and responsibilities of patrolling within his jurisdiction looking for criminal activity and responding to calls for service. (Apr. 7, 2022 Tr. at 252). He clarified that he was patrolling in the City of Marion, which is located in Marion County, Ohio. (*Id.* at 254). He then testified he observed Keith commit a traffic infraction prompting the officer to conduct a traffic stop. (*Id.*).

**{¶23}** While it may have been ideal for the prosecutor to establish venue in express terms, the testimony elicited from Officer Thomas on direct examination was sufficient to establish a nexus between the defendant and Marion County. Additionally, the officer testified on cross-examination regarding the specific intersection where the traffic violation occurred and the location of the subsequent

traffic stop. (*Id.* at 273-274). This provided a basis for the prosecutor to expressly ask about venue on redirect examination. Consequently, there was no error in counsel's failing to object to this testimony.

{¶24} Next, Keith complains that, although his trial counsel objected to the admission of the polygraph examination results, counsel should have requested an instruction regarding the jury's use of the results of the polygraph examination pursuant to *Souel*. In addressing Keith's second assignment of error we found no error in the instructions the trial court provided to the jury relating to the polygraph examination. Consequently, we find no error by trial counsel in failing to request a more precise instruction.

{¶25} Finally, Keith asserts his trial counsel should have objected to the court's failure to provide an instruction specifically informing the jury how to weigh the expert testimony of Stechschulte. Again, we previously found no error in the trial court's instructions relating to the testimony of the experts. Thus, we find the lack of an objection is not indicative of ineffective assistance of trial counsel.

{¶26} Having rejected the three instances where Keith complains about his trial counsel, we overrule the first assignment of error.

**{¶27}** Finding no error prejudicial to the appellant in the particulars assigned and argued, we affirm the judgment of the Marion County Court of Common Pleas.

*Judgment Affirmed*

**WALDICK and ZIMMERMAN, J.J., concur.**

**/jlr**